# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

NO. 21-2205

Jody Lutter,

<u>Plaintiff/Appellant,</u>

vs.

JNESO, DISTRICT COUNCIL 1, et. al.,

<u>Defendants/Appellees.</u>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

## BRIEF OF APPELLEE JNESO, DISTRICT COUNCIL NO. 1

Seth Ptasiewicz, Esq.
Kroll Heineman Ptasiewicz &
Parsons
99 Wood Ave.
Iselin, New Jersey 08830
(732) 491-2109
sptasiewicz@krollfirm.com
Attorneys for Appellee JNESO,
District Council No. 1

Seth Ptasiewicz, Esq.
   *Of Counsel and On the Brief*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................1

STATEMENT OF ISSUES FOR REVIEW ...............................................................1

STATEMENT OF THE CASE ....................................................................................2

STATEMENTS OF FACTS ........................................................................................2

STATEMENT OF PROCEDURAL HISTORY ..........................................................5

SUMMARY OF ARGUMENT ...................................................................................8

STANDARD OF REVIEW .......................................................................................12

LEGAL ARGUMENT ...............................................................................................14

POINT I

THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF/APPELLANT'S
CLAIMS AGAINST DEFENDANT/APPELLEE JNESO, DISTRICT COUNCIL
NO. 1 AS MOOT.........................................................................................................14

    A. Plaintiff/Appellant's Claims Are Moot, And The District Court Lacked
    Subject Matter Jurisdiction Therefore.............................................................14

    B. Plaintiff/Appellant's Arguments That A Live Case Or Controversy
    Remains Are Unpersuasive ..............................................................................15

POINT II

PLAINTIFF/APPELLANT'S COMPLAINT WAS PROPERLY DISMISSED
AS IT FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE
GRANTED...................................................................................................................33

CONCLUSION...........................................................................................................38

# TABLE OF AUTHORITIES

**Cases**

Abbotts Dairies of Pa, Inc., 788 F.2d 143 (3d Cir. 1986).........................................15

Abood v. Detroit Bd. Of Educ., 431 U.S. 209 (1977) ..................................................3

Already, LLC v. Nike, Inc., 568 U.S. 85 (2013) ......................................................15

Belgau v. Inslee, 359 F. Supp. 3d 1000 (W.D. Wash. 2018), aff'd 975 F.3d 940
(9th Cir. 2020), cert denied 141 S. Ct. 2795 (2021) .................................................35

California v. San Pablo & Tulane R.R. Co., 149 U.S. 308 (1893)..........................16

Campbell Ewald Co. v. Gomez, 136 S.Ct. 63 (2016)........................................23, 24

Carey v. Piphus, 435 U.S. 247 (1978) ......................................................................15

Conrad v. Boiron, Inc., 869 F.3d 536 (7th Cir. 2017) ..............................................25

Cooley v. Cal. Statewide Law Enf't Ass'n, No. 2:18-cv-02961-JAM-AC,
2019 BL 25601 (E.D. Cal. Jan. 25, 2019) ................................................................34

Couden v. Duffy, 446 F.3d 483 (3d Cir.2006) ..........................................................12

DelCostello v. International Brotherhood of Teamsters, 462 U.S. 141 (1983).........1

Dragotta v. W. View Sav. Bank, 395 Fed. Appx. 828 (3rd Cir. 2010) ...................12

Durst v. Or. Educ. Ass'n, 450 F. Supp. 3d 1085 (D. Or. 2020),
aff'd 854 Fed. Appx. 916 (9th Cir. 2021)..................................................................17

Ellis v. Brotherhood. of Railway Clerks, 466 U.S. 435 (1984)................................26

Fischer v. Governor of New Jersey, 842 Fed. Appx. 741 (3d Cir. 2021) ..................
.......................................................................................... 5, 6, 31, 32, 34 36

Free Speech Coalition, Inc. v. AG United States, 825 F.3d 149 (3d Cir. 2016).....20

Case: 21-2205    Document: 29    Page: 3    Date Filed: 12/22/2021

<u>Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.</u>,
528 U.S. 167 (2000)) ................................................................30

<u>Gotha v. United States</u>, 115 F.3d 176 (3rd Cir. 1997).............................13

<u>Gould Elecs., Inc. v. United States</u>, 220 F.3d 169 (3rd Cir. 2000)..........................13

<u>Grossman v. Hawaii Government Employees Ass'n</u>, 18-cv-00493, 2020 BL 38661
(D. Hawaii January 31, 2020), aff'd 854 Fed. Appx. 911 (9th Cir. 2021)..20, 21, 22

<u>Hartnett v. Penn. State Educ. Ass'n</u>, 963 F.3d 301 (3rd Cir. 2020)..1, 29, 30, 31, 32

<u>Hendrickson v. AFSCME Council 18</u>, 992 F.3d 950 (10th Cir. 2021)...................17

<u>Heritage Farms, Inc. v. Solebury Twp.</u>, 671 F.2d 743 (3rd Cir. 1982)...................11

<u>Jackson v. Napolitano</u>, No. 19CV1427-LAB (AHG), 2020 WL 5709284
(S.D. Cal. Sept. 23, 2020) ..........................................................17

<u>Janus v. AFSCME Council 31</u>, 585 U.S. __ , 138 S. Ct. 2448;
201 L. Ed. 2d 924 (2018)......................................3,9,11, 12, 29,33, 34, 35

<u>Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman</u>, 237 F.3d 186
(3d Cir. 2001) ..........................................................................30

<u>Lamberty v. Conn. State Police Union</u>, 2018 WL 5115559, at *6-8
(D. Conn. Oct. 19, 2018) ..........................................................18

<u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472 (1999).........................................28

<u>Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch</u>, 510 F.3d 253
(3d Cir. 2007)..........................................................................30

<u>Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320</u>,
441 F.Supp. 3d 762 (D. Minn. 2020)........................................................20

<u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922 (1982)......................................37

<u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299 (1986)................................15

Molina v. Pa. Soc. Serv. Union, 392 F.Supp.3d 469 (M.D. Pa. 2019)....................17

Morse v. Lower Merion School District, 132 F.3d 902 (3rd Cir. 1997) ................12

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3rd Cir. 1977) ............13

New York State Rifle and Pistol Ass'n, Inc. v. City of New York,
140 S.Ct. 1525 (2020)...........................................................................26, 27, 28, 29

PBGC v. White Consol. Indus., 998 F.2d 1192 (3rd Cir. 1993) .............................13

Phillips v. County of Allegheny, 515 F.3d 224 (3rd Cir. 2008)..............................12

Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941) ..........................11

S-1 v. Spangler, 832 F.2d 294 (4th Cir. 1987) ........................................................15

Sands v. NLRB, 825 F.3d 778 (D.C. Cir. 2016)......................................................18

Santiago v. GMAC Mortg. Corp., 417 F.3d 384 (3rd Cir. 2005)............................12

Smith v. Beiker, 854 Fed. Appx. 937 (9th Cir. 2021) ..............................................34

Smith v. N.J. Educ. Ass'n, 425 F. Supp. 3d 366 (D.N.J. 2019)...........5, 6, 31, 32, 34

Smith v. Superior Court, No. 18-cv-05472-VC, 2018 BL 424905
(N.D. Cal. Nov. 16, 2018)......................................................................................34

Thulen v. AFSCME, 844 Fed. Appx. 515 (3d Cir. 2021) ...................5, 6, 31, 32, 36

Weyandt v. Pa. State Corrs. Officers Ass'ns, 2019 WL 5191103, at *3-5
(M.D. Pa. Oct. 15, 2019).........................................................................................18

Zielinski v. Service Employees Local 503, 499 F. Supp. 3d 804 (D. Or. 2020).....21

Zimmer v. N.J. Div. of Child Prot. & Permanency, 741 Fed. Appx. 875
(3d Cir. 2018)..........................................................................................................20

## Statutes:

29 U.S.C. §151 ....................................................................................2

42 U.S.C. §1983 ....................................................................15, 33, 37

N.J.S.A. § 12A:3-104 ........................................................................16

N.J.S.A. § 52:14-15.9e ............................................................1, 3, 9, 35

N.J.S.A. § 52:14-15.9e(1) ..................................................................33

## Rules

Rule 12(b)(1) ..........................................................................13,19,24

Rule 12(b)(6) ...............................................................2,7, 12, 33, 37

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1, JNESO, District Council 1 (hereinafter referred to as "JNESO") states that it has no parent corporation and that no publicly traded corporations own 10% or more of its stock. A supplemental disclosure statement will be filed upon any change in the information provided herein.

## STATEMENT OF ISSUES FOR REVIEW

1.  Did the District Court correctly hold that Plaintiff/Appellant's Amended Complaint is moot in light of JNESO's voluntary and unconditional refund of all monies claimed by Plaintiff/Appellant in her Amended Complaint, with interest?

2.  Did the District Court correctly decline to render an advisory opinion concerning the constitutionality of the New Jersey Workplace Democracy Enhancement Act, N.J.S.A. § 52:14-15.9e, absent a live case or controversy arising thereunder in light of this Court's decision in *Hartnett v. Penn. State Educ. Ass'n* 963 F.3d 301 (3rd Cir. 2020)?

## STATEMENT OF THE CASE

## STATEMENT OF FACTS

Defendant/Appellee JNESO is a labor organization as that term is defined by the National Labor Relations Act ("NLRA"), 29 U.S.C. §151, *et seq.* At all times relevant to this action, JNESO represented certain healthcare workers employed at the Essex County Hospital Center (hereinafter referred to as "Essex County") facility located in Cedar Grove, New Jersey.

Plaintiff/Appellant is employed at Essex County Hospital Center. (Joint Appendix ("J.A.") at 53). Defendant/Appellee JNESO is the certified bargaining representative of the collective negotiations unit covering Plaintiff/Appellant's position. (J.A. at 53, 55). On or about June 30, 2011, Plaintiff/Appellant became a member of JNESO and authorized Essex County to deduct membership dues from her paychecks and remit same to JNESO on her behalf. (J.A. at 56, 60). Pursuant to a collective negotiations agreement between JNESO and Defendant/Appellee County of Essex, Plaintiff/Appellant authorized County of Essex to deduct her membership dues from her regular paycheck and remit them directly to JNESO. (J.A. at 56, 60).

On May 18, 2018, New Jersey enacted the Workplace Democracy Enhancement Act (sometimes referred to as the "WDEA"), which amended the New Jersey Employee-Employer Relations Act. (J.A. at 53-54). In relevant part,

Case: 21-2205    Document: 29    Page: 9    Date Filed: 12/22/2021

the WDEA provides that, "[e]mployees who have authorized the payroll deduction of fees to employee organizations," as Plaintiff/Appellant had, "may revoke such authorization by providing written notice to their public employer during the 10 days following each anniversary date of their employment." N.J.S.A. § 52:14-15.9e. (J.A. at 53-54). The Amended Complaint does not allege that Plaintiff/Appellant attempted to revoke her dues deduction authorization agreement at any time prior to the passage of the WDEA in May 2018.

Shortly thereafter, the United States Supreme Court issued its decision in *Janus v. AFSCME Council 31*, 585 U.S. __, 138 S. Ct. 2448; 201 L. Ed. 2d 924 (2018). (J.A. at 53). In that decision, the Supreme Court reversed its four-decades-old decision in *Abood v. Detroit Bd. Of Educ.*, 431 U.S. 209 (1977), and held that "[s]tates and public-sector unions may no longer extract agency fees from nonconsenting employees," and that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages [...] unless the employee affirmatively consents to pay." *Id.* In such cases, "[b]y agreeing to pay, nonmembers are waiving their First Amendment rights[.]" *Id.* Critically, nothing in the Supreme Court's *Janus* decision in any way affects the ability for public employers and their employees' labor organizations to enter into agreements permitting the deduction of members' dues payments. Nor does that decision hold that Unions may not hold members to their contractual obligations pursuant to the

3

dues deduction authorization card signed by those members to remit dues to the Union until such time as those authorization cards and the obligations therein are properly terminated under the terms of the authorization card.

As alleged in the Amended Complaint, Plaintiff/Appellant first notified Defendant/Appellee County of Essex of her intent to resign her JNESO membership and terminate her dues deduction authorization on or about July 12, 2018, with a carbon copy to Defendant JNESO. (J.A. at 56, 62). Plaintiff/Appellant alleges that she was then advised by her employer, the County of Essex that she could not revoke her dues deduction authorization agreement until the ten-day period following her employment anniversary, beginning May 31, 2019. Plaintiff/Appellant does not allege any response from Defendant/Appellee JNESO, either concerning her attempted withdrawal of her dues deduction authorization agreement or her resignation of her JNESO membership. (J.A. at 56, 64).

On June 1, 2019, Plaintiff/Appellant alleges that she once again notified the County of Essex of her desire to revoke her dues deduction authorization. (J.A. at 56, 66). As the Amended Complaint makes clear, the County of Essex ceased deducting Plaintiff/Appellant's union membership dues during the May 25, 2019 pay period, and it has never again deducted any union-related fee from Plaintiff/Appellant's paycheck. (J.A. at 56, 68-69).

Plaintiff/Appellant filed her original Complaint on June 6, 2019. On October 8, 2019, the District Court stayed further proceedings in the instant matter, pending the outcomes of three related lawsuits, each of which the District Court of New Jersey dismissed.[1] No discovery or further proceedings took place in this case while the stay was in place. Shortly after those three related matters were dismissed, the District Court lifted its stay on the instant litigation on February 5, 2020, and Plaintiff/Appellant filed the Amended Complaint on February 28, 2020.

On March 12, 2020, Defendant/Appellee JNESO unconditionally refunded, in full and with interest, the total amount of membership dues deducted from Plaintiff/Appellant's paychecks and remitted to JNESO by Defendant/Appellee County of Essex on Plaintiff/Appellant's behalf between July 12, 2018 and June 1, 2019. (J.A. at 85-87).

## STATEMENT OF PROCEDURAL HISTORY

On or about June 6, 2019, Plaintiff/Appellant filed a Complaint, which was stayed by the District Court pending the outcomes of three similar matters that

---

[1] *Fischer v. Governor of New Jersey*, 425 F. Supp. 3d 366 (D.N.J. 2019), *aff'd* 842 Fed.Appx. 741 (3rd Cir. 2021), *cert denied* Pet. No. No. 20-1751 (Nov. 1, 2021); *Smith v. New Jersey Educ. Ass'n*, 425 F. Supp. 3d 366 (D.N.J. 2019), *aff'd sub nom. Fischer v. Governor of New Jersey,* 842 Fed.Appx. 741 (3rd Cir. 2021), *cert denied* Pet. No. No. 20-1751 (Nov. 1, 2021) and *Thulen v. AFSCME New Jersey Council 63*, 844 Fed.Appx. 515 (3rd Cir. 2021). Those three matters were heard by the same judge who heard the instant matter and counsel to those Plaintiffs is identical to counsel to Plaintiff/Appellant in the instant matter.

were then pending before the District Court for the District of New Jersey.[2]  As

such, no discovery was conducted in this matter while the stay remained in effect.

After the District Court dismissed the *Thulen*, *Smith*, and *Fischer* matters and the

stay was lifted, Plaintiff/Appellant filed an Amended Complaint on February 28,

2020.

The Amended Complaint alleges, in part, that Plaintiff/Appellant possessed

a First Amendment right to resign her JNESO membership at any time, and to

immediately renege on her contractual obligations to remit membership dues to

JNESO pursuant to a validly-executed dues deduction authorization agreement

signed by Plaintiff/Appellant.  In her Amended Complaint, Plaintiff/Appellant

sought injunctive relief to enjoin any further deduction of dues or fees from her

future paychecks; a refund of all dues deducted from her paychecks by Essex

County and remitted to JNESO on her behalf following her first attempt to revoke

her dues deduction authorization agreement on July 12, 2018; a declaratory ruling

recognizing a First Amendment right for public sector employees to resign their

union memberships at any time, regardless of any statutory requirements or

---

[2] *Fischer v. Governor of New Jersey*, 425 F. Supp. 3d 366 (D.N.J. 2019), *aff'd* 842 Fed.Appx. 741 (3rd Cir. 2021), *cert denied* Pet. No. No. 20-1751 (Nov. 1, 2021); *Smith v. New Jersey Educ. Ass'n*, 425 F. Supp. 3d 366 (D.N.J. 2019), *aff'd sub nom. Fischer v. Governor of New Jersey,* 842 Fed.Appx. 741 (3rd Cir. 2021), *cert denied* Pet. No. No. 20-1751 (Nov. 1, 2021) and *Thulen v. AFSCME New Jersey Council 63*, 844 Fed.Appx. 515 (3rd Cir. 2021).

contractual commitments to the contrary; an advisory declaratory ruling that the Workplace Democracy Enhancement Act is facially unconstitutional; an injunction prohibiting any further deduction and remittance of further dues on Plaintiff/Appellant's behalf; attorney's fees; and other just and proper relief to be ordered by the Court.

On March 12, 2020, JNESO voluntarily and unconditionally tendered Plaintiff/Appellant a check in the amount of $1,209.58, representing all dues and fees deducted by Essex County from Plaintiff/Appellant's paychecks after her attempt to withdraw from her dues deduction authorization agreement on July 12, 2018, plus interest. (J.A. at 85-91)

On April 2, 2020, JNESO filed a Motion to Dismiss Plaintiff/Appellant's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That Motion was joined by JNESO's fellow Defendant/Appellees on April 3, 2020. Plaintiff/Appellant filed a Cross-Motion for Declaratory Judgment on May 26, 2020. On November 30, 2020, the District Court granted the Defendant/Appellees' Motions to Dismiss as to Plaintiff/Appellant's claims for injunctive relief against future dues deductions; denied Plaintiff/Appellant's Motion for Declaratory Judgment affording her the unfettered right to resign union membership at any time; and reserved ruling on whether Plaintiff/Appellant was entitled to a declaratory judgment that her Constitutional rights were violated and

that the Workplace Democracy Enhancement Act is unconstitutional. Following

further briefing, the District Court dismissed the remainder of Plaintiff/Appellant's

claims on June 1, 2021.

Plaintiff/Appellant initiated this Appeal on June 22, 2021.

## SUMMARY OF ARGUMENT

Plaintiff/Appellant Jody Lutter is employed by Defendant/Appellee Essex

County at the Essex County Hospital Center in Cedar Grove, New Jersey. On or

about June 30, 2011, Plaintiff/Appellant became a member of Defendant/Appellee

JNESO, a labor organization and signatory to a Collective Negotiations Agreement

with Essex County which governs Plaintiff/Appellee's terms and conditions of

employment. In accordance with that membership and pursuant to the terms of

that Collective Negotiations Agreement, Plaintiff/Appellant voluntarily executed a

dues deduction authorization agreement, authorizing the County of Essex to

automatically deduct her JNESO dues from her paychecks.

On May 18, 2018, New Jersey adopted the Workplace Democracy

Enhancement Act (hereinafter referred to as the "WDEA"). Pursuant to the

WDEA, any public sector employee who signed a dues deduction authorization

contract between themselves and their public employer could "revoke such

authorization by providing written notice to their public employer during the 10

days following each anniversary date of their employment," with such revocation

becoming effective "on the 30th day after the anniversary date of employment."

N.J.S.A. 52:14-15.9e. Shortly thereafter, the United States Supreme Court issued

its decision in *Janus v. AFSCME Council 31*, 585 U.S. ___ , 138 S. Ct. 2448; 201 L.

Ed. 2d 924 (2018), which prohibited public sector unions from compelling non-

members to pay any fees to those unions, but did not disturb the existing

relationships between public sector unions, public sector union members, and those

members' employers.

On July 12, 2018, Plaintiff/Appellant contacted Defendant/Appellee County

of Essex by letter, with carbon copy to JNESO, requesting that her membership in

JNESO be terminated and that her dues deduction authorization be revoked. Essex

County responded, explaining the Workplace Democracy Enhancement Act's rules

and procedures did not permit her to do so at that time.

On June 1, 2019, Plaintiff/Appellant revoked her dues deduction

authorization in accordance with the Workplace Democracy Enhancement Act.

Unsatisfied with that outcome, Plaintiff/Appellant filed the instant complaint,

seeking a refund of the dues deducted under the terms of her authorization

agreement following her attempted July 2018 revocation and an order declaring

that she has an unlimited right to resign union membership and revoke her dues

deduction authorization at any time. On March 12, 2020, JNESO tendered

Plaintiff/Appellant a check for the full amount of monetary relief claimed in her Complaint, plus interest.

Plaintiff/Appellant's claims are moot. All of Plaintiff/Appellant's claims arise from her allegations that dues were wrongly deducted from her paychecks after her first attempt to revoke her dues deduction authorization agreement, and that the Workplace Democracy Enhancement Act thus violated her constitutional rights. On March 12, 2020, JNESO cured the entirety of Plaintiff/Appellant's alleged monetary injuries by fully refunding those amounts which she claims were wrongly withheld in violation of her rights. That refund was paid unconditionally, not as a settlement offer, and was made before the parties undertook discovery or further steps in the litigation process as the case had been stayed by the District Court. JNESO's unconditional refund of Plaintiff/Appellant's dues renders her financial claims moot, along with those declaratory rulings she requested arising therefrom. JNESO cannot provide Plaintiff/Appellant with any further relief since it is not the governmental entity responsible for enforcing the WDEA. There is no remaining live case or controversy in this matter, depriving the courts of any basis to issue anything other than an advisory opinion which is in essence what Plaintiff/Appellant has asked this Court to do in her Brief to this Court. Furthermore, such an advisory opinion would violate the principles of so-called "*Pullman* abstention," which "may be invoked where there is an unsettled question

10

of state law" which has not yet been considered in state court, "the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed." *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3rd Cir. 1982) (citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941)). The District Court was correct to dismiss the Amended Complaint in its entirety as moot, and this Court should affirm accordingly.

Even had the District Court disregarded the mootness of the Amended Complaint and considered the merits of Plaintiff/Appellant's claims for declaratory relief, the Amended Complaint should still have been dismissed. Plaintiff/Appellant bases her claims on a tortured interpretation of *Janus* which that decision does not support. *Janus* held that "[s]tates and public-sector unions may no longer extract agency fees from nonconsenting employees," and that "[n]either an agency fee nor any other payment to the union may be deducted from a *nonmember*'s wages [...] unless the employee affirmatively consents to pay." *Janus v. AFSCME Council 31*, 585 U.S. ___, 138 S. Ct. 2448, 2486 (2018). (emphasis added). *Janus* did not alter any rights or obligations for *members*. It is uncontested that all dues deducted from Plaintiff/Appellant's pay were on the basis of her membership in JNESO. Furthermore, *Janus* did not grant her the right to resign at any time, did not invalidate her member dues deduction authorization

11

agreement, and did not create any other new right for Plaintiff/Appellant as a *member* of JNESO. Plaintiff/Appellant is not the first litigant to raise such claims seeking to expand the scope of *Janus*' holding. Thus far, every Federal Circuit Court and District Court to consider such claims – including this one – have rejected such attempts. The Third Circuit should again rebuff those attempts to go beyond the holding in *Janus* and affirm the dismissal of the instant Amended Complaint.

## **STANDARD OF REVIEW**

The Amended Complaint was dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Review of the District Court's decision to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is plenary. *Santiago v. GMAC Mortg. Corp.*, 417 F.3d 384, 386 (3rd Cir. 2005). "When considering an appeal from a dismissal of a complaint pursuant to Rule 12(b)(6), [this Court accepts] as true all well-pled factual allegations." *Santiago*, 417 F.3d at 386 (citing *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997)). "Dismissal of a complaint under Rule 12(b)(6) is only appropriate if it can be said that, under a plausible reading of the complaint, the plaintiff is not entitled to relief." *Dragotta v. W. View Sav. Bank*, 395 Fed. Appx. 828, 830 (3rd Cir. 2010) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008)).

Under Rule 12(b)(1), on the other hand, while the defendant bears the burden of proving mootness, the plaintiff bears the initial burden of establishing subject-matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3rd Cir. 2000). Defendants bear the burden of proving mootness once a plaintiff has met that initial burden. When a defendant contests that a court lacks subject matter jurisdiction, the attack may either be construed as a facial or factual challenge. *Id*. at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," while in considering a factual attack, "the court may consider evidence outside the pleadings." *Id*. (citing *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993); *Gotha v. United States*, 115 F.3d 176, 178-79, 36 V.I. 392 (3rd Cir. 1997)). A district court has "substantial authority" to "weigh the evidence and satisfy itself" in assessing whether it possesses subject matter jurisdiction over a claim, as "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claim." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977).

Case: 21-2205    Document: 29    Page: 19    Date Filed: 12/22/2021

## LEGAL ARGUMENT

## POINT I

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF/APPELLANT'S CLAIMS AGAINST DEFENDANT/APPELLEE JNESO, DISTRICT COUNCIL NO. 1 AS MOOT

### A. Plaintiff/Appellant's Claims Are Moot, As Such, The District Court Lacked Subject Matter Jurisdiction Thereover.

Plaintiff/Appellant's claims for damages are moot, and as such the District Court correctly held it no longer had subject matter jurisdiction to consider those claims. Plaintiff/Appellant sought compensatory damages for dues deducted from her paychecks between July 2018 and May 2019, as well as declaratory relief affirming her right not to be a member of JNESO. (J.A. at 57). By virtue of the fact that JNESO has already refunded Plaintiff/Appellant's dues at issue in this Amended Complaint with interest (J.A. at 85-87), Plaintiff no longer has a cognizable claim to any compensatory damages.

Furthermore, having effectively resigned her JNESO membership in May 2019, Plaintiff/Appellant is no longer a JNESO member (J.A. at 56-57), and has not been subject to JNESO membership or dues withdrawals since that May 2019 resignation. (J.A. at 56-57). As such, Plaintiff/Appellant stands no risk of further dues deductions without first affirmatively rejoining JNESO and consenting to permit the County of Essex to deduct her membership dues from her paychecks. Accordingly, there is no active dispute which would entitle Plaintiff/Appellant to

Case: 21-2205    Document: 29    Page: 20    Date Filed: 12/22/2021

either monetary or declaratory relief. The District Court correctly dismissed the Amended Complaint accordingly as moot, and this Circuit should affirm that dismissal.

A plaintiff's claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A]n appeal must be dismissed as moot when an event occurs that prevents the appellate court from granting effective relief." *In re Abbotts Dairies of Pa, Inc.*, 788 F.2d 143, 150 n. 6 (3d Cir. 1986).

Plaintiff/Appellant's claims for compensatory damages arise under 42 U.S.C. §1983. Such damages are available only "to compensate injuries caused by the constitutional deprivation" alleged. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986) (emphasis and brackets omitted) (quoting *Carey v. Piphus*, 435 U.S. 247, 265 (1978)). Where a plaintiff has already been compensated for their alleged losses, the plaintiff "ha[s] no present need for remedial relief from the federal courts," and that plaintiff's claim for relief with respect to their damages is moot. *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (dismissing §1983 action as moot where plaintiffs had obtained tuition reimbursement that was "ultimate object of their action").

JNESO's tender of the unconditional check also rendered Plaintiff/Appellant's claim for compensatory relief moot. The Supreme Court has

15

Case: 21-2205    Document: 29    Page: 21    Date Filed: 12/22/2021

held constitutional claims must be dismissed as moot where the defendant had deposited the entire amount of money that the plaintiff was seeking into a bank account in the plaintiff's name, which was an accepted form of payment under applicable state law. *California v. San Pablo & Tulane R.R. Co.*, 149 U.S. 308 (1893). The Court's reasoning in *San Pablo* applies with equal force here. New Jersey law treats negotiable instruments, like the check which JNESO voluntarily and unconditionally provided to Plaintiff/Appellant, as the legal equivalent of cash. *See* N.J.S.A. § 12A:3-104 (UCC 3-104). Therefore, when Plaintiff/Appellant received the check, her compensatory damages claim was wholly satisfied. The fact that Plaintiff/Appellant has declined to cash the check does not change the check's status as a cash-equivalent, unconditional tender of the entire amount she claimed in her Amended Complaint. Under *San Pablo R.R.*, then, all of Plaintiff/Appellant's monetary and constitutional claims are thus moot.

Courts have universally rejected claims similar to Plaintiff/Appellant's for monetary relief in situations materially indistinguishable from the instant case. Where unions have voluntarily and unconditionally refunded a former member's dues following their resignations from membership, courts have uniformly dismissed those plaintiffs' claims as moot, regardless of whether the particular plaintiff chose to cash the check or not. See, *Durst v. Or. Educ. Ass'n*, 450 F. Supp. 3d 1085 (D. Or. 2020), *aff'd* 854 Fed. Appx. 916 (9th Cir. 2021)

Case: 21-2205    Document: 29    Page: 22    Date Filed: 12/22/2021

("Defendants voluntarily refunded the full amount of dues garnished, plus interest, for the months following Plaintiffs' requested cancellation," eradicating the effects of the defendant union's conduct; "[t]he mere fact that Plaintiffs [...] refused to cash the refunds does not turn an otherwise moot claim into a live case or controversy."); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950 (10th Cir. 2021) (Plaintiff "no longer has a personal stake in receiving a declaration addressing the constitutionality of the Union's opt-out window as applied to him" once his membership is already terminated and dues deductions cease and alleged wrongly-withheld dues are refunded); *Jackson v. Napolitano*, No. 19CV1427-LAB (AHG), 2020 WL 5709284 (S.D. Cal. Sept. 23, 2020) (Plaintiff's claim for a refund of withheld union dues was mooted when the union repaid the disputed dues); *Mayer v Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637 (E.D. Pa. 2019) (dismissing claims challenging post-resignation dues payments because "Plaintiff has received a refund for the dues that were paid after he resigned from the Union, and his actual injury therefore has been redressed"); *Molina v. Pa. Soc. Serv. Union*, 392 F.Supp.3d 469, 482 (M.D. Pa. 2019) ("Plaintiff's claim has been rendered moot by the refund provided by Defendants."); *Weyandt v. Pa. State Corrs. Officers Ass'ns*, 2019 WL 5191103, at *3-5 (M.D. Pa. Oct. 15, 2019) (named plaintiffs' claims were moot where they were allowed to resign and post-resignation dues were refunded because dispute was "unaccompanied by any

continuing, present adverse effects") (citations omitted). The same result is required here. See also, *Lamberty v. Conn. State Police Union*, 2018 WL 5115559, at *6-8 (D. Conn. Oct. 19, 2018)  (claims seeking damages based on prior deductions of fair-share fees were moot because defendant union refunded all fair-share fees that had been deducted, plus interest, after Supreme Court issued *Janus*); *Sands v. NLRB*, 825 F.3d 778, 783-85 (D.C. Cir. 2016) (unfair practice claim against union for purportedly failing to inform member that she had option of paying agency fees rendered moot by union's tendering of refund of dues paid); *cf. Babb v. Cal. Teach. Ass'n*, 378 F.Supp.3d 857, 886 (C.D.Cal. 2019) (claim challenging delay in processing of public employee's request to resign union membership was moot because employee was no longer a union member and "suffered no damages because of the [...] delay").

Here, as in each of those cases, Plaintiff/Appellant is a former member of a public sector union who has requested monetary relief under §1983 for dues allegedly deducted following an attempt to resign from membership and revoke a deduction authorization agreement.  JNESO has already refunded the entirety of those dues to Plaintiff/Appellant, with interest. As the actual injury Plaintiff/Appellant alleged has already been redressed, there is no present and immediate need for judicial intervention. The District Court thus correctly ruled

18

Case: 21-2205    Document: 29    Page: 24    Date Filed: 12/22/2021

that it lacks subject matter jurisdiction over the claims, and dismissed the Complaint under Rule 12(b)(1) accordingly. This Court should affirm that ruling.

To the extent that Plaintiff/Appellant wants more from JNESO, including a declaration by JNESO that the WDEA is unconstitutional, the legal effect of such a declaration by JNESO would for all intents and purposes be meaningless since it is not charged with administering the WDEA or rendering a legal opinion as to the constitutionality of the WDEA as it is not a governmental entity charged with administering or enforcing that law. The only legal relief that JNESO could offer to Plaintiff/Appellant is the refund unconditionally of her dues with interest from the date she initially sought to resign and not collecting dues from her unless she signs a new dues authorization card. Both sources of relief have been provided to her.

Likewise, Plaintiff/Appellant's claims for prospective injunctive relief are similarly moot. Plaintiff/Appellant sought a declaratory order that she was "entitled to the right to resign from the Defendant Union[] at any time and cease any accrual of financial support to the Defendant Union[] immediately upon resigning," and that "union dues or agency fees cannot be collected without a clear and knowing waiver [post-dating the *Janus* decision] from an employee wherein they acknowledge that they are giving up First Amendment rights, and do so freely." (J.A. at 57). Plaintiff/Appellant's requests for either form of prospective

relief are moot, as she has already resigned her membership in JNESO and will not have any further dues or other financial support taken from her paychecks without her affirmative consent.

Claims for prospective declaratory or injunctive relief "require[] plaintiffs to establish a 'concrete and particularized' injury that is also 'actual and imminent.'" *Zimmer v. N.J. Div. of Child Prot. & Permanency*, 741 Fed. Appx. 875 (3d Cir. 2018) (quoting *Free Speech Coalition, Inc. v. AG United States*, 825 F.3d 149, 165 (3d Cir. 2016)). In other cases where former public sector union members have requested prospective relief following their successful resignations from membership, courts have uniformly held that those plaintiffs lacked standing to request prospective relief against hypothetical re-impositions of membership obligations such as dues. See, e.g., *Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762 (D. Minn. 2020) (plaintiff "failed to demonstrate a prospective injury that affects her in a personal and individual way or poses a threat of ongoing or future harm" where plaintiff was "no longer a union member and no dues [were] being withheld from her paychecks."); *Grossman v. Hawaii Government Employees Ass'n*, 18-cv-00493, 2020 BL 38661 (D. Hawaii January 31, 2020), *aff'd* 854 Fed. Appx. 911 (9th Cir. 2021) (plaintiff had "no personal stake" to challenge the statutory schemes governing dues deductions and membership resignations once "no longer in a

position where it is reasonable to expect that she will again fall within the purview

of [those statutes] and be subjected to [their] opt-out window."); *Zielinski v.*

*Service Employees Local 503*, 499 F. Supp. 3d 804 (D. Or. 2020) (plaintiff lacked

standing to challenge statutory dues deduction scheme where it was uncontested

that dues deductions on his behalf had stopped and he did not "argue that union

dues will be deducted in contravention of state law absent further fraud").

    Of particular relevance, the State of Hawaii had implemented a dues

deduction authorization statute substantially similar to New Jersey's. A union

member attempted to terminate her membership in the union and cease dues

deductions outside the statutory revocation window, and the union did not honor

her request until after she filed a lawsuit. *Grossman*, slip op at *4-*6. At that

point, the union asked the public employer to cease dues deductions, and the union

tendered Grossman a full refund of the dues claimed as damages in her complaint,

plus interest. *Id.* at *4. Grossman chose not to deposit the check. *Id.* at *4, *9.

The District Court of Hawaii ruled that Grossman's claims for damages in the

amount of dues deducted from her paycheck after she communicated her desire to

cease deductions, as well as her claim for injunctive and declaratory relief, were

rendered moot by her former union's tendering of a full refund of her paid dues

with interest. *Id.* at *8-*10. That Court rejected Grossman's arguments that her

claim was not moot under either the "voluntary cessation" or the "capable of

repetition, yet evading review" exceptions to mootness because she faced no risk of being subjected to the statute's requirements in the future, unless she voluntarily re-joined her union. *Id.* at \*10-\*11. The Ninth Circuit affirmed the district court's ruling in *Grossman* in a single-page opinion, holding that Grossman's claim for prospective relief was mooted by her successful resignation of her union membership, and that she had "failed to allege a plausible claim" of any violation of her First Amendment rights. 854 Fed. Appx. at 912.

*Grossman* is on all fours with this case, and its reasoning supports the District Court's dismissal of the Amended Complaint under Rule 12(b)(1) for lack of jurisdiction. Plaintiff/Appellant is not a JNESO member and has not been a JNESO member since May 2019. (J.A. at 56-57). Since she resigned her JNESO membership, JNESO has made no effort to re-enroll Plaintiff/Appellant as a member, and has made no effort to accrue any financial support whatsoever from her. (J.A. at 56-57). On the contrary, the only financial transaction between Plaintiff and JNESO since Plaintiff resigned was JNESO's refund of Plaintiff/Appellant's dues which formed the basis for this lawsuit. (J.A. at 85-87).

Furthermore, Plaintiff/Appellant has not alleged any circumstances which make it reasonable to expect that she would ever again have dues deducted from her paychecks by her Employer payable to JNESO or otherwise be subject to the statutory union membership resignation mechanisms. Only she can authorize

future deductions of dues from her paycheck. In other words, Plaintiff/Appellant has failed to plead any concrete or particularized harm that is ongoing or imminent. Absent any cognizable prospective injury, Plaintiff/Appellant cannot pursue her to claim for prospective relief, and as such the District Court correctly dismissed the Amended Complaint.

## B. **Plaintiff/Appellant's Arguments That A Live Case Or Controversy Remains Are Unpersuasive.**

Tellingly, throughout the instant litigation, Plaintiff/Appellant has not cited to a single case where any Court has ruled that a former public sector union member could continue to pursue a claim for withheld dues even after such dues were refunded unconditionally to the member. In fact, there are no decisions so holding, as all Courts who have faced similar factual scenarios have found those claims to be moot.

Attempting to circumvent this line of cases, Plaintiff/Appellant has argued that JNESO's unconditional refund of her dues should instead be construed as an unaccepted settlement offer governed by the Supreme Court's decision in *Campbell Ewald Co. v. Gomez,* 136 S.Ct. 63 (2016), and its progeny. As JNESO's unconditional refund of her dues was not a settlement offer, that case is inapplicable.

There, the defendant made a Rule 68 settlement offer in the total amount of the named plaintiff's statutory damages before the plaintiff moved for class

certification. *Campbell Ewald*, 136 S.Ct. at 667-68. The named plaintiff allowed the offer to expire without accepting it, and the defendant then moved to dismiss under Rule 12(b)(1), arguing that the unaccepted Rule 68 settlement offer had mooted the entire case. *Id.* at 668. The Supreme Court held that the unaccepted offer did not moot the plaintiff's claims. Because the unaccepted offer of settlement was "withdrawn" following its expiration pursuant to the language of Rule 68, the plaintiff had "no entitlement to the relief" he sought and "remained emptyhanded." *Id.* at 670, 672. A live controversy therefore still existed.

In *Campbell Ewald*, the Court expressly limited its holding to unaccepted *settlement offers* made pursuant to Rule 68 and not unconditional refunds as was the case here. *Id.* at 672. In the instant case, JNESO was not engaging in settlement discussions under Rule 68, nor in fact making any conditional offer at all to Plaintiff/Appellant. Rather, JNESO *actually refunded* Plaintiff/Appellant the full value of the membership fees sought in the Amended Complaint, with interest, and without any conditions or expectation of reciprocal commitments. No time limits were placed on the refund by JNESO for Plaintiff/Appellant to accept the payment and cash the check. Unlike the plaintiff in *Campbell Ewald*, the instant Plaintiff/Appellant was not left "empty handed," but has in fact already received the entire amount that she would recover if she were to succeed in this litigation

with interest. Plaintiff/Appellant received that full, unconditional refund with no proverbial "strings attached."

Plaintiff/Appellant's continued reliance on *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017) is similarly without merit. The defendant in that case argued that "at some point, a plaintiff's stubborn refusal to accept a generous settlement offer should be taken as the legal equivalent of acceptance," but that Court held that a plaintiff's refusal to settle a "so-called negative value case[]" could still be "rational, if the party hopes to establish an important principal through the case" and have their day in court. *Id.* at 541-542. Significantly, however, that case again involved a settlement offer. JNESO's unconditional tender of the amounts claimed by Plaintiff/Appellant was not a "generous settlement offer"; in fact, it was not a settlement offer at all. It was a full, unconditional refund of the full amount of membership dues paid to JNESO on Plaintiff/Appellant's behalf between July 12, 2018 and June 1, 2019.

Similarly, Plaintiff/Appellant also argues that, where claims can be aggregated, even small or negative-value claims can amount to major collective concerns. In support of that proposition, Plaintiff/Appellant cites to a consolidated case including not one but two class action suits filed by private sector union members against their union. *Ellis v. Brotherhood. of Railway Clerks*, 466 U.S. 435 (1984). That is, to be sure, the fundamental logical underpinning of the class-

action complaint, which allows a collective group to seek damages which are too small to warrant litigation on an individual basis. Plaintiff/Appellant here is not a member of a class. Neither the original Complaint nor the Amended Complaint identify Plaintiff/Appellant as a class representative or even name a single other Plaintiff to this action. Nor was the matter captioned or pled as a class action lawsuit. Nor did she seek class certification. Because this case is not a class action, the *Ellis* Court's concerns that a class representative could be "bought off" to the detriment of the class are not present. Plaintiff/Appellant stands alone on the face of her pleading, and so too do her claims for recovery. The hypothetical existence of other unidentified individuals who might share some ideological position with Plaintiff/Appellant presents no justiciable case or controversy, and that threadbare allegation simply cannot sustain ongoing proceedings on this matter. Indeed, if as Plaintiff/Appellant alleges in her Brief to this Court that there are thousands of other state workers in the State of New Jersey who may have a viable challenge to the WDEA they are certainly free to pursue such claims provided that they, unlike Plaintiff/Appellant, have claims that are not moot. Respectfully, Plaintiff/Appellant claims cannot continue.

Finally, Plaintiff/Appellant's reliance on Justice Alito's dissent in *New York State Rifle and Pistol Ass'n, Inc. v. City of New York*, 140 S.Ct. 1525 (2020), is entirely unpersuasive. Even assuming, *arguendo*, that the *New York State Riffle*

dissent was binding (which it is not – it is a dissenting opinion rejected by a majority of the Supreme Court), Plaintiff/Appellant's case is materially different. As Justice Alito describes in his dissent, the posture of *New York State Rifle and Pistol* was significantly different from that of the instant dispute. In *New York State Rifle and Pistol*, the defendant City "fought [...] tooth and nail in the District Court and the Court of Appeals" in defense of its ordinance restricting firearm transportation, then opposed the Supreme Court's grant of *certiorari*. *Id.* at 1539-1540. After the Supreme Court granted cert, the City amended the statute in question to incorporate the same rights that the plaintiffs had requested. *Id.* at 1526-1527. In a *per curiam* opinion, the Supreme Court ruled that this amendment mooted the dispute. *Id.* In his dissent, Justice Alito argued that the dispute should not have been mooted as it meant "that petitioners are stuck with the attorney's fees they incurred in challenging a rule that the City ultimately abandoned," after the City had kept the plaintiffs engaged in years of protracted litigation "from the drafting of the complaint, through multiple rounds of District Court motion practice, to appellate review, and proceedings in [the Supreme] Court." *Id.* at 1539.

Plaintiff/Appellant argues based on this dissent that JNESO's unconditional refund does not moot the dispute because it would deprive Plaintiff/Appellant of attorney's fees. These arguments fall short. Even before mounting this argument,

Plaintiff/Appellant concedes that such an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1999). Furthermore, Justice Alito's dissent explicitly relies on the years of expensive litigation, motivated by the City's own desire to protect its ordinance, to justify his conclusion that the *New York State Rifle and Pistol* plaintiffs should not have been stuck with their attorneys' fees. The instant matter was nowhere near as advanced; when JNESO unconditionally refunded Plaintiff/Appellant's funds, the original complaint was barely a year old (the majority of which time saw the instant proceedings temporarily stayed), and the Amended Complaint had only just been filed. No discovery had taken place, and the Motion to Dismiss had not even been filed. That posture stands in stark contrast to the five years of extensive litigation present in *New York State Rifle and Pistol*. Those policy arguments raised by Justice Alito in dissent as to mooting the dispute in that case simply do not exist here.

Furthermore, Justice Alito's dissent is just that: a dissent. Over this dissent, the Supreme Court ruled that the dispute was moot because the plaintiff had already obtained the relief sought in that complaint. As such, this is no different that the instant matter. Plaintiff has received everything she requested in her Amended Complaint from JNESO. The District Court was correct to reject the

same arguments that the Supreme Court found unpersuasive in *New York State Rifle and Pistol* and dismiss the instant dispute as moot, and this Court should do the same and affirm.

Finally, and perhaps most importantly, this Court's recent ruling in *Hartnet v. Penn. State Educ. Ass'n*, 963 F.3d 301 (3rd Cir. 2020) puts to rest Plaintiff/Appellant's argument that this matter is not moot. In that case, four public school teachers challenged the Constitutionality of Pennsylvania's statute permitting unions representing public sector employees to collect agency fees from non-members. *Hartnet*, 963 F.3d at 304-305. That litigation commenced before the Supreme Court issued its decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). The *Hartnet* plaintiffs sought "a declaration that the agency-fee provisions in their collective-bargaining agreements, as well as the Pennsylvania statutes authorizing them, were unconstitutional," "an injunction requiring the unions to delete the agency-fee provisions from the collective-bargaining agreements and banning them from future agreements," and nominal damages. *Id.* at 305. Once *Janus* was decided, the Pennsylvania State Education Association "notified public schools of the decision and told them to stop deducting agency fees from teachers' paychecks," and also "set up procedures to refund all agency fees collected during or attributable to the period after *Janus*." *Id.*

The *Hartnet* Court noted that courts are generally "skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along," but recognized that "if the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Id.* at 306-307 (citing *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001) (Alito, J.)). "[T]he touchstone of the voluntary-cessation doctrine," the *Hartnet* Court opined, "is not how willingly the defendant changed course. Rather, the focus is on whether the defendant made that change unilaterally and so may 'return to [its] old ways' later on." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)). The *Hartnet* defendants "had every reason to believe [...] that they could collect agency fees from nonmembers" until "the Supreme Court changed course in *Janus*," according to the Third Circuit, but they "immediately stopped collecting agency fees" and "conceded that Pennsylvania's agency-fee arrangement violates the First Amendment and have forsworn collecting fees from nonmembers" thereafter. *Id.* Accordingly, this Court saw "no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again," and determined that the *Hartnet* plaintiffs could no

longer present a live case or controversy. *Id.* Noting that "federal courts are not

'roving commissions' charged with scrubbing invalid laws from the statute books,"

this Court refused to strike down Pennsylvania's agency fee statute absent a live

case or controversy, and opted instead to "await a case where the parties earnestly

dispute the validity or enforceability of Pennsylvania's agency-fee statute." *Id.* at

308-309.

In the case at bar, JNESO has acted in a substantially similar fashion as the

union defendant did in *Hartnet*. The instant litigation commenced before the

District Court dismissed the complaints filed in *Smith*, *Fischer*, and *Thulen*, each

such dismissal since affirmed by this Circuit. In its opinions in those cases, the

District Court described a hypothetical scenario in which strict adherence to the

Workplace Democracy and Enhancement Act could be unconstitutional as applied.

Recognizing the similarities between the situation described in the *Thulen* and

*Smith* decisions and the County of Essex's handling of Plaintiff/Appellant's 2018

resignation attempt, JNESO took steps to comply with the law as interpreted there.

JNESO immediately refunded all dues which Plaintiff/Appellant claimed were

unlawfully deducted from her paychecks between her attempted union resignation

on June 12, 2018 and her successful resignation on June 1, 2019, with interest.

JNESO also altered its dues collection policies to ensure that it would never again

collect dues deducted in strict adherence to the WDEA. In reliance on the *Thulen*,

*Fischer*, and *Smith* guidelines, JNESO has adopted new dues deduction authorization agreements which expressly permit members to resign their membership at any time and revoke their dues deduction authorizations on the earliest of the following January 1, July 1, or membership anniversary. (J.A. at 88-91).

By refunding all dues claimed by Plaintiff/Appellant in her Amended Complaint, with interest, Plaintiff/Appellant's claim became moot as there was no live case or controversy. By expressly allowing members to resign and revoke their authorizations in compliance with this Court's interpretation and application of the WDEA, JNESO has ensured that the harm alleged in the Amended Complaint will never occur again to Plaintiff/Appellant nor any other public sector employee that JNESO represents who later wishes to withdraw his or her authorization. Because JNESO "emphatically disclaimed any intent to enforce the challenged statute" once the District Court issued its opinions and guideposts in *Thulen*, *Fischer*, and *Smith*, Plaintiff/Appellant in the instant matter "ha[s] nothing to fear." *Id*. at 309. Accordingly, in compliance with *Hartnet*, JNESO respectfully requests that the Court dismiss the instant Complaint in full.

**PLAINTIFF/APPELLANT'S COMPLAINT WAS PROPERLY DISMISSED AS IT FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE <u>GRANTED</u>**

Even if Plaintiff/Appellant's claims were not moot, the Amended Complaint failed to state a claim under Rule 12(b)(6). Plaintiff/Appellant's claims against JNESO present no cognizable legal claim on which relief could be granted. Plaintiff/Appellant claimed that JNESO violated her Constitutional rights under 42 U.S.C. § 1983, and demanded a refund of dues paid to JNESO on her behalf since July 12, 2018 as damages, as well as an injunction against any further dues deductions. (J.A. at 57). Plaintiff/Appellant also requested declarations recognizing a "constitutional right of employees to resign from union membership at any time" and that "N.J.S.A. §52:14-15.9e(1), restricting the revocation of any waiver that fulfills the requirements of *Janus* is void and unenforceable and that the right to resign and thereby immediately cease accrual of any financial support to the Defendant Unions can be exercised at any time." Plaintiff/Appellant's Amended Complaint fails to state any legal basis supporting any of those requests for relief.

The Amended Complaint misstates the Supreme Court's holding in *Janus*. The *Janus* decision does not recognize a Constitutional right to resign union membership at any time, and does not alter any pre-*Janus* dues deduction

Case: 21-2205     Document: 29     Page: 39     Date Filed: 12/22/2021

authorizations validly executed by union members. Instead, *Janus* recognized the right of non-members to abstain from any and all financial support for unions, but expressly recognized that employees may "waiv[e] their First Amendment rights" by "affirmative[ly] consent[ing] to pay" union dues. *Janus v. AFSCME Council 31*, 585 U.S. __, 138 S. Ct. 2448, 2486 (2018).

A number of courts throughout the United States, including this Court, have ruled in cases raising similar arguments. Those Courts have uniformly upheld the validity of pre-*Janus* dues deduction authorizations. See, e.g., *Smith v. N.J. Educ. Ass'n*, 425 F. Supp. 3d 366 (D.N.J. 2019), *aff'd* sub nom. *Fischer v. Governor of NJ*, 842 Fed. Appx. 741 (3d Cir. 2021) (Holding that "[a]s previously noted, *Janus* does not invalidate the existing contractual relationships between unions and their members," as "*Janus* did not concern the relationship of unions and members; it concerned the relationship of unions and non-members."); *Cooley v. Cal. Statewide Law Enf't Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 BL 25601 (E.D. Cal. Jan. 25, 2019), *complaint dismissed* 385 F. Supp. 3d 1077 (E.D. Cal. 2019) ("The plaintiff in Janus was not a union member, never agreed to be a union member, and never affirmatively agreed [...] to have any union-related fees deducted from his paycheck [....] Janus is inapplicable to voluntary union members."); *Smith v. Superior Court*, No. 18-cv-05472-VC, 2018 BL 424905 (N.D. Cal. Nov. 16, 2018), *affirmed* sub nom. *Smith v. Beiker*, 854 Fed. Appx. 937 (9th Cir. 2021) ("Janus

actually acknowledges in its concluding paragraph that employees can waive their First Amendment rights by affirmatively consenting to pay union dues. That's what Smith did, and he is likely on the hook to pay dues through the end of the contractual period."); *Belgau v. Inslee*, 359 F. Supp. 3d 1000 (W.D. Wash. 2018), *aff'd* 975 F.3d 940 (9th Cir. 2020), *cert denied* 141 S. Ct. 2795 (2021) ("Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before *Janus* rings hollow. *Janus* says nothing about people join a Union, agree to pay dues, and then later change their mind about paying union dues."). To date, there is not a single court in the United States which has interpreted or applied *Janus* differently.

Like the plaintiffs in those other cases, Plaintiff/Appellant here admits that she voluntarily executed her dues deduction authorization agreement in June 2011, and made no effort to revoke same until July 2018. (J.A. at 56). Accordingly, *Janus* does not entitle Plaintiff/Appellant to declaratory relief affirming a Constitutional right which simply does not exist, and whose existence *Janus* expressly rejected.

Plaintiff/Appellant has not stated any claim which requires any declaration related to N.J.S.A. §52:14-15.9e(1). Plaintiff/Appellant is no longer a member of JNESO, and as such is no longer encumbered or affected by N.J.S.A. §52:14-15.9e(1). Unless Plaintiff/Appellant voluntarily rejoins JNESO, there is no

reasonable possibility that she will ever be impacted by that statutory provision again. Absent some cognizable application of that statute to her, Plaintiff/Appellant cannot continue to pursue her claim and as such dismissal under Rule 12(b)(6) was likewise appropriate.

Indeed, this Court has recently issued decisions in substantially similar cases holding that former public sector union members who have successfully resigned their former memberships lack standing to challenge the Workplace Democracy Enhancement Act's dues deduction revocation requirements. As this Court opined, where plaintiffs "are not currently members of" a public union by virtue of their successful resignations therefrom, "they lack standing to seek relief from a future harm of dues withdrawal from their paychecks." *Thulen v. AFSCME*, 844 Fed. Appx. 515, 518-519 (3d Cir. 2021). In *Thulen* as here, the plaintiffs were former public sector union members who had resigned their memberships and revoked their dues deduction authorization agreements as required by the WDEA, but still sought declaratory relief as to the WDEA's constitutionality. Any future harm based on a public employer's hypothetical renewed dues deductions, over a plaintiff's hypothetical objection, would be "speculative[,] conjectural or hypothetical," and such imaginary concerns do not confer standing to pursue the declarations sought by Plaintiff/Appellant here. *Id.* (internal quotations omitted). See also, *Fischer v. Governor of New Jersey*, 842 Fed. Appx. 741 (3d Cir. 2021)

(refusing to opine on the constitutionality of the WDEA absent a live case or controversy, and refusing a request to broaden its interpretation of *Janus* to alter pre-*Janus* dues deduction authorization agreements validly executed by union members).

Plaintiff/Appellant's claims against JNESO under 42 U.S.C. §1983 must also fail. JNESO is a private organization, not a state actor. In order to state a claim under §1983, the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936-37 (1982). In the instant case, JNESO as a private entity entered into a contractual agreement with Plaintiff/Appellant in her capacity as its member, which authorized JNESO to receive dues validly deducted from Plaintiff/Appellant's paycheck by her employer. Accordingly, there is no outstanding harm for this Court to remedy under §1983, and the District Court's dismissal of these claims for failure to state a claim pursuant to Rule 12(b)(6) as against JNESO should be affirmed.

# **CONCLUSION**

For all of the foregoing reasons, the Defendant/Appellee, JNESO, District

Council 1 respectfully requests that the Order of the District Court be affirmed.

Respectfully submitted,

_/s/ Seth Ptasiewicz_

Seth Ptasiewicz, Esq.
Kroll Heineman Ptasiewicz & Parsons
99 Wood Ave.
Iselin, New Jersey 08830
(732) 491-2109
sptasiewicz@krollfirm.com
Attorneys for Defendant/Appellee

Dated: December 22, 2021

## COMBINED CERTIFICATIONS

I, Seth Ptasiewicz, certify as follows:

1. I am a member in good standing of the Bar of this Court having been admitted on August 10, 2007.

2. This brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure as it contains 8395 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

3. This brief complies with the typeface and type style requirements of Rules 32(a)(5) & (6) of the Federal Rules of Appellate Procedure as it has been prepared using Microsoft Word, in proportionally-spaced, Times New Roman font with 14 point type.

4. A virus check of the electronic version of this brief was performed using McAfee Security's Virus scan, and the document was found to be virus free.

5. The text of the electronic version of this brief is identical to the hard copies filed with the Court within five (5) days of the electronic filing.

6. A copy of this brief was served upon counsel for Appellant by electronic mail simultaneous with its electronic filing and two (2) hard copies were thereafter sent by First-Class Mail at Appellant's counsel's address of record, Matthew C. Moench, Esq., King, Moench, Hirniak & Mehta, LLP, 51 Gibralter Drive, Suite 2F, Morris Plains, New Jersey 07950, and Appellees' counsel of record, Robin Magrath, Esq., Office of Essex County Counsel, 465 Dr. Martin Luther King, Jr. Blvd., Hall of Records, Room 535, Newark, New Jersey 07102; Jana DiCosmo, Esq. Deputy Attorney General, State of New Jersey, Office of the Attorney General, 25 Market Street, P.O. Box 112, Trenton, New Jersey 08625; and Christine Lucarelli. Esq., State of New Jersey, Public Employment Relations Commission, 495 West State Street, Trenton, New Jersey 08625.

<em>/s/ Seth Ptasiewicz</em>

Seth Ptasiewicz, Esq.

Date: November 22, 2021